Dear Commissioner Laborde:
You requested that this office issue an opinion clarifying Opinion No. 92-550 which addresses several issues regarding the financing of and the acquisition of the Hotel Dieu Hospital (the "Hospital") by the Louisiana Public Facilities Authority (the "LPFA") from the Daughters of Charity (the "Daughters") for the benefit of the State of Louisiana.
Pursuant to the terms of the "Agreement for Purchase and Sale of Assets of Hotel Dieu Hospital" (the "Purchase Agreement") the property to be acquired by the LPFA consists of a Medicare/Medicaid certified hospital with 461 beds; a rehabilitation unit with 14 beds; a skilled nursing facility with 31 beds; a licensed home health agency; a licensed community hospice; an independent clinical laboratory; a kidney transplant center with five stations; a 70,000 square foot medical office building; and, related buildings and parking facilities (the "Facility"). In addition, the Purchase Agreement provides that the sale will include the corporeal movable equipment located upon or used in connection with the Facility, including all medical devices, machinery, vehicles, apparatus, appliances, computer hardware, equipment, fixtures, beds, furniture, coverings, blinds, curtains, and treatments, with limited exceptions.
You advised that the list of movable property and equipment to be transferred to the LPFA will include all movable equipment that has been made immovable by destination, and to the extent possible, all movables that are not immovable by destination will be made immovable by declaration. All movable assets which cannot be made immovable by declaration will be procured as movables.
The Purchase Agreement also provides that the Department of Health and Hospitals ("DHH") will purchase the inventory of the Hospital in an amount not to exceed $2,000,000, and DHH will assume the majority of all equipment and software maintenance contracts, service contracts and professional, personal and consulting services contracts presently in existence and required for the continued operation of the facility. DHH intends to utilize LAC 34:I.907 "Purchase of Antiques, Used or Demonstrator Equipment" in connection with the purchase of the inventory.
It is anticipated that DHH will assign the operation of the Hospital to the Louisiana Health Care Authority (the "LHCA") to provide indigent health care services to the citizens of this state in accordance with the annual agreement between these two entities as provided in R.S. 46:707(D)(5).
Your first question is whether the LPFA can acquire movable equipment presently within the hospital without bidding under the provisions of Title 38?
The LPFA is a unique public corporation created pursuant to the Public Trust laws contained in R.S. 9:2341, et seq. R.S.9:2341(D) states that all public trusts shall be subject to the Public Contracts Law. R.S. 9:2343(E) further requires that contracts for construction, labor, equipment, material or repairs shall be awarded to the lowest responsible bidder in accordance with the Public Contracts Law.
The judiciary has created an exception to the Public Contracts Law in instances where the transaction is very complex. In JTS Realty Corp. v. City of Baton Rouge, 499 So.2d 274
(La.App. 1st Cir. 1986), writ denied 503 So.2d 19, the court stated that "[i]f express statutory and constitutional authority indicates that the public bid laws should not be applied, or if the contract is too complex to be the object of bidding, the contract is not void for failure to apply the public bid laws." (Emphasis supplied)
In this instance, the LPFA is attempting to acquire an operating hospital with resident patients, doctors, employees, equipment and services that must be maintained before, during and after the actual acquisition.
The Purchase Agreement, and accompanying schedules, is contained in three volumes. Over eight (8) fully operational buildings located on over 60 different parcels of land will be acquired. The list of equipment to be acquired is over 200 pages in length.
The Hospital will have movables that LPFA desires to acquire as part of the Facility which are not immovables by destination and cannot be made immovable by declaration. It would take weeks to establish the specifications, to undertake the evaluations and make an award in order to follow the public bid law. This is not conducive to an ongoing operation. Title 38 does not have a provision for the acquisition of used equipment. The acquisition of the existing movables as part of the purchase of the Hospital, and included in the purchase price, is the most expedient and appropriate fashion of acquiring such items in order to ensure the continued efficient operation of the facility. To attempt to bid the required furnishings would cause a disruption of the operation of the Hospital.
The complexity of furnishing an open and operating hospital would present extensive problems in the functioning of the facility. If the LPFA does not procure the existing movables from the Daughters, and the Daughters were to remove these items from the Facility at the real estate closing, the State would have to be in a position to bid hundreds of items in a very short period of time to avoid disrupting hospital operations. This would not only disrupt the operations of the hospital, but could endanger patients who are receiving care in the facility during such a transition.
The Public Contracts Law was not designed to address such a procurement and, because of its complexity, this transaction is the type contemplated in JTS Realty Corp., thus exempting it from application of the Public Contracts Law.
Your second question is whether DHH can assume preexisting contracts that do not comply with Chapters 16 and 17 of Title 39, which are required for the operation of the facility, for a twelve month emergency transition period.
You advised that in order to ensure an orderly transition and maintain the integrity of the operation of the facility, there is the requirement that certain services be maintained through closing, and immediately following the hospital being turned over to the State. These services directly impact the care of the patients, and a disruption of such services may cause a threat to the health, safety and welfare of the patients being treated by this facility.
Under Chapter 16 of Title 39 (R.S. 39:1481-1526), professional services, personal services, consulting service contracts for less than $75,000, and social services contracts for less than $150,000, may be entered into without competitive negotiations or bidding, and, therefore, may be assumed through the negotiation process. However, consulting services contracts in excess of $75,000 and social services contracts in excess of $150,000 must be competitively selected, with certain named exceptions not applicable to this transaction.
In accordance with R.S. 39:1490(B), the Office of Contractual Review has promulgated certain Rules and Regulations that allow for emergency purchases in certain situations. See, LAC 34:V.142A and 34:V.154.
Such an emergency situation must be determined in writing by the director of contractual review or his designee. The using agency which requests an emergency procurement must indicate in writing the basis of the emergency. LAC 34:V.142A. Based upon the complexity of this transaction, the director of contractual review could declare an emergency, and certain provisions of Chapter 16 of Title 39 could then be waived during the emergency period to allow DHH to bring the contracts into compliance with Chapter 16.
DHH has indicated that a transition of this nature will take at least one year to complete. Although this is an unusual length of time to allow for the application of an emergency, it does not appear to be impermissible considering the nature of this transaction. This would be an administrative decision that would not appear to be arbitrary or capricious considering the magnitude of the task.
Naturally, if it is possible for DHH and/or the LHCA to accomplish the transaction in a shorter period of time, it must be encouraged to do so. However, considering the number of contracts (approximately 130) for varying purposes, and the resources which will have to be utilized to continue the day to day operations of the facility, it is impossible to predict if the task could be accomplished in a shorter period of time.
Under Chapter 17 of Title 39 (R.S. 39:1551-1755), the Louisiana Procurement Code, R.S. 39:1598 provides for an emergency procurement when there exists an imminent threat to the public safety or welfare, and LAC 34:I.1103 provides that when there is an immediate need for supplies and services that cannot be met through normal procurement methods and the lack of which would seriously threaten the health or safety of any person, they can be procured under emergency procedures.
DHH or LHCA could not stop the operation of equipment, or discontinue supplies to an operating hospital without jeopardizing the health or safety of some of the patients therein, especially those who are on life support systems, or whose lives are dependent on the delivery of certain services or medication. However, DHH or LHCA must begin to comply with the Procurement Code during the 12 month emergency period.
As to inventory, or other movables which DHH might want to procure, it may be possible to utilize LAC 34:I.907, which allows for the procurement of "antiques, used or demonstrator equipment or supplies", under certain circumstances. Of course, the appropriate procedures must be followed. Presuming that DHH complies with these requirements, the Chief Procurement Officer is authorized to approve this procurement without the need for competitive bidding.
Your third question is whether the LHCA can lease office space within the facility, after DHH assigns the operations of the facility to LHCA, without complying with Title 41?
You advised that DHH is planning to turn the operations of the facility which is owned by the LPFA over to the LHCA upon closing, in accordance with R.S. 36:251(B) and R.S.46:707(D)(5). The question thus presented is whether LHCA can continue to lease out the office space presently being occupied by private physicians without complying with the Public Lease Law contained in R.S. 41:1211, et seq.
The LHCA is authorized to hold title to immovable and movable property, to acquire such property through purchase, gift, lease, or otherwise, and to dispose of such property by sale or lease in accordance with the general laws of this state. However, the sale of any immovable property, the lease of an entire facility, or the sale of an entire facility, shall be subject to approval by the legislature. R.S. 46:707(A)(1). The LHCA is also authorized to enter into contracts with any public or private entity in the furtherance of the authority's purposes. R.S. 46:707(A)(3). Furthermore, R.S. 46:707(A)(4) provides that the LHCA shall "enjoy the same powers and exemptions granted to hospital service districts under the provisions of R.S. 46:1051 et seq., insofar as such powers and exemptions may be applicable to the authority and not inconsistent with the power granted the authority in this part".
Since there is no provision relative to LHCA operating a hospital facility owned by another entity within R.S. 46:707, one must examine the application of R.S. 46:1074 to this factual situation. R.S. 46:1074 authorizes a hospital service district, notwithstanding the provisions of R.S. 41:1211, et seq. or any law to the contrary, to negotiate the lease of medical office buildings and facilities it owns or operates. This is subject to the proviso that the lease rental shall be sufficient to recoup over a period of twenty years the capital investment of such hospital service district commission or that of any health facility it owns or operates.
In this instance, LHCA will be operating this facility, therefore, it should enjoy the same powers as a hospital service district, as this is not inconsistent with the powers granted the LHCA under R.S. 46:707.
As R.S. 46:1074 is a "special statute", under general statutory construction, it should prevail over a statute of general applicability. The public lease law, R.S. 41:1211, et seq., has been held to be a general law and statutes such as R.S. 46:1074 should prevail. See Arnold v. Board of Levee Commissioners, supra. Under this rationale, the application of R.S. 46:1074 to LHCA would make this transaction acceptable under Louisiana law.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
RPI/jav 2827m